**OAK MFG. CO., a corporation, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. No. 56 C 1715.**

United States District Court
N. D. Illinois.
Jan. 13, 1961.

515

Peter B. Atwood, Chicago, Ill., for plaintiff.

Robert Tieken, U. S. Atty., Chicago, Ill., for defendant.

MINER, District Judge.

This matter having been submitted to the Court on a stipulation of facts entered into by the parties, and the Court having read and considered the said stipulation, the pleadings filed herein, and the documents and exhibits presented by the parties, and the Court having read, heard and considered the briefs, memoranda and oral arguments submitted by counsel in support of their respective positions, and the Court being fully advised, the Court hereby enters its Findings of Fact and Conclusions of Law as follows:

### Findings of Fact

1. The plaintiff, Oak Mfg. Co. (hereinafter called "Oak"), is an Illinois corporation with offices at Chicago, Illinois.

2. On January 8, 1951, Oak by appropriate action of its Board of Directors on that day, established a formal written Profit Sharing Bonus Plan. (Herein-

after referred to as the Bonus Plan.) This Bonus Plan covered only salaried employees, those employees employed at an hourly rate being covered by a separate bonus plan. The Bonus Plan of January 8, 1951, supplemented a profit-sharing and pension plan adopted in 1944.

At the time of the adoption of the Bonus Plan on January 8, 1951, Oak kept its accounts and filed its federal income tax returns on the basis of a fiscal year ended May 31, so that its first fiscal year ending after January 8, 1951, the date of the adoption of the Plan, was May 31, 1951. Thereafter Oak, by appropriate action of the Commissioner of Internal Revenue, changed its fiscal year to coincide with the calendar year, effective June 1, 1951. Thus there was a short taxable period of seven months ending December 31, 1951 which was also the subject matter of review by the National Enforcement Commission.

3. During the periods here involved there were 7 employees of the plaintiff who were entitled to and did share under Part A of the Bonus Plan. During 1950 and prior to end of the plaintiff's fiscal year ending May 31, 1950, these 7 employees had received bonuses totaling $39,600. The highest single bonus of this group was in the amount of $11,800. No bonuses other than these were paid by Oak to these 7 employees during the calendar year 1950.

On May 31, 1951 and December 31, 1951, Oak paid bonuses to these 7 employees under Part A of the Bonus Plan. The bonuses paid on May 31, 1951 totaled $59,463.76 and the bonuses paid on December 31, 1951 totaled $31,165.

4. In December of 1949, the President of Oak died. His death resulted in a shifting of responsibilities within the executive staff of Oak. Due to this shifting of responsibilities and other factors resulting from the death of Oak's President, certain salary increases were approved on February 24, 1950 to be effective on January 1, 1950. The salary structure relating to plaintiff's executives immediately prior to and as of January 1, 1950 was as follows:

| Name | Classification Prior to January 1, 1950 | Annual Salary Dec. 31, 1949 | Annual Salary Fixed Feb. 24, 1950 Effective January 1, 1950 |
|---|---|---|---|
| E. Sandstrom | Vice President (made Chairman of Board of Directors Feb. 11, 1950) | $33,200 | $38,200 |
| Robert A. O'Reilly | Vice President (made President Feb. 11, 1950) | 32,500 | 38,200 |
| Edward J. Mastney | Vice President | 21,950 | 21,950 |
| Harry J. Veitch | Asst. Sales Manager (made Vice President in Charge of Sales February 11, 1950) | 18,150 | 20,650 |
| John A. Rovelstad | Treasurer | 17,500 | 17,500 |
| William Bessey | Secretary | 12,500 | 15,000 |

5. On December 11, 1950 salary increases were approved for Oak's executive staff; these increases were made effective on June 1, 1950 and raised the January 1, 1950 salaries referred to in paragraph 4 of these Findings to the amounts indicated below:

| Name | Classification | Salary as of June 1, 1950 |
| --- | --- | --- |
| E. Sandstrom | Vice President (made Chairman of Board of Directors Feb. 11, 1950) | $42,000 |
| Robert A. O'Reilly | Vice President (made President February 11, 1950) | 42,000 |
| Edward J. Mastney | Vice President | 24,150 |
| Harry J. Veitch | Asst. Sales Manager (made Vice President in Charge of Sales February 11, 1950) | 22,175 |
| John A. Rovelstad | Treasurer | 19,250 |
| William Bessey | Secretary | 16,500 |

6. With respect to the calendar year 1952, Oak paid bonuses to the employees participating under Part A of the Bonus Plan in the total amount of $50,000. The highest single bonus paid under Part A of the Bonus Plan during the calendar year 1952 was $14,899, which full amount was paid to both Mr. E. Sandstrom and Mr. R. O'Reilly.

7. The salaries paid for the payroll period which included January 15, 1950 to the executives of Oak who subsequently participated under Part A of the Bonus Plan totalled $161,500; annual salaries increased as of June 1, 1950, $14,575; or a total of $176,075.

8. Oak filed its federal income and excess profits tax return for its fiscal year ended May 31, 1951, within the time provided by law, and made payment of the tax due according to said income tax return. The Revenue Agent made certain adjustments to said return upon audit thereof, reflecting a disallowance of $18,-288.76 with respect to salary bonus payments disallowed by reason of the action of the National Enforcement Commission. The Commissioner of Internal Revenue, through his Revenue Agent, disallowed part of said salary bonus payments made by Oak to its employees on the ground that such payments were made in violation of General Wage Stabilization Regulation 1 promulgated under the Defense Production Act of 1950, 50 U.S. C.A.Appendix, § 2061 et seq. These disallowances resulted in additional taxes due for the fiscal year ended May 31, 1951 in the amount of $13,313.23.

9. Oak filed its federal income and excess profits tax return for its short taxable year ended December 31, 1951 (for the period beginning June 1, 1951 and ending December 31, 1951) within the period provided by law, and made payment of the tax due according to said income tax return. As a result of the determination of the National Enforcement Commission with respect to salary bonus payments made during the fiscal year ended May 31, 1951, resulting in the disallowance of $18,288.76 for said fiscal year on the ground that said payments were made in violation of General Wage Stabilization Regulation 1, there was an additional tax due for the short taxable period ended December 31, 1951 in the amount of $281.

10. Oak filed its federal income and excess profits tax return for its calendar year 1952 within the period provided by law, and made payment of the tax due

according to said income tax return. The Revenue Agent made certain adjustments to said return upon audit thereof, reflecting disallowance of $4,623 with respect to salary bonus payments disallowed by reason of the action of the National Enforcement Commission. The Commissioner of Internal Revenue, through his Revenue Agent, disallowed said salary bonus payments made by Oak to its employees on the ground that such payments were made in violation of General Salary Stabilization Regulation 2 promulgated under the Defense Production Act of 1950. These disallowances resulted in additional taxes due for the calendar year 1952 in the amount of $4,280.26.

11. Within the time prescribed by law, Oak filed its claim for refund with respect to income taxes asserted to have been erroneously assessed and collected on account of the disallowance of the referred to salary bonus payments made by Oak as described in paragraphs 2 and 4 above, as follows:

(i) For the fiscal year ended May 31, 1951, $13,313.23.

(ii) For the short taxable period June 1, 1951 to December 30, 1951, $281.00.

(iii) For the calendar year 1952, $4,280.26.

12. No statutory notice of disallowance of said claims for refund has been mailed to Oak pursuant to the provisions of Section 6532(a) (1) of the 1954 Internal Revenue Code, 26 U.S.C.A. § 6532(a) (1), and more than six months have expired since the filing of said claims.

13. On or about April 7, 1953, there was served upon Oak by the Office of Salary Stabilization, through its chief counsel, a complaint before the National Enforcement Commission. Oak Mfg. Co. filed an answer and supplemental answer to this complaint.

14. Following the issuance of said complaint, hearings were had on April 30, 1953, May 15, 1953 and June 11, 1953 before an Enforcement Commissioner designated by the National Enforcement Commission. At the conclusion of said hearings both the Office of Salary Stabilization and Oak filed proposed Findings of Fact and Conclusions of Law. In support of its proposed Findings of Fact and Conclusions of Law, the Office of Salary Stabilization filed a memorandum. On July 8, 1953 the said Enforcement Commissioner made certain findings and determinations against Oak. On July 24, 1953, Oak filed with the National Enforcement Commission a notice of appeal pursuant to the provisions of GPR No. 1, Revised, as revised, of the National Enforcement Commission dated August 23, 1952, 17 F.R. 7737.

On April 15, 1954, the National Enforcement Commission acting within the Office of Defense Mobilization issued its final order and decision upon the aforementioned appeal.

15. On July 11, 1955, the National Enforcement Commission sent to the Commissioner of Internal Revenue a "Certificate of Disallowance." Adjustments referred to in paragraphs 8, 9 and 10 of these Findings were made as a result of the issuance of this document.

16. Thereafter, Oak filed its complaint in the United States District Court for the District of Columbia as Civil Action No. 1740–54 against the National Enforcement Commission, seeking to enjoin the enforcement of said final determination.

17. After a hearing by a three-judge district court, the court dissolved itself and referred the matter to the District Court for disposition. After argument, the District Court held that Oak had an adequate remedy at law and dismissed the complaint. Notice of appeal from this ruling was filed but the appeal was not perfected. Thereafter Oak paid the applicable income taxes resulting from the disallowance of salary payments and in due course filed its claims for refund of said additional taxes.

18. The plaintiff's "base bonus year" for the purpose of the administrative regulations applicable to this case was the calendar year 1950.

### Conclusions of Law

1. This Court has jurisdiction over the parties to and the subject matter of this suit.

■ 2. This Court has jurisdiction to review the determinations of the National Enforcement Commission in a proceeding instituted by a taxpayer for the refund of internal revenue taxes. 28 U.S.C. § 1346(a) (1); Internal Revenue Code of 1954, 26 U.S.C. § 7422(a, b).

■ 3. The action of the Commissioner of Internal Revenue in disallowing wage or salary payments as nontaxable deductions from gross income and in assessing and collecting additional taxes, is not insulated from review because the disallowance, assessment and collection were predicated solely upon a "Certificate of Disallowance" issued and submitted to him by the National Enforcement Commission, and not upon an independent evaluation by him of the propriety of such payments under the facts and the law.

■ 4. The Court is not precluded by concepts of estoppel, res judicata, or otherwise, from reviewing in this tax refund proceeding the determinations of the National Enforcement Commission on the basis of which the Commissioner of Internal Revenue disallowed wage or salary deductions and assessed and collected additional taxes. The taxpayer's failure to seek direct review of the 1954 final order and decision of the National Enforcement Commission does not prevent it from maintaining this suit and does not prevent the Court from examining the correctness of the determinations of the Commission to the extent permitted under law.

■ 5. The provision in Title VII (General Provisions) of the Defense Production Act of 1950, as amended, 50 U.S.C.A.Appendix, § 2159, that

"The functions exercised under this Act shall be excluded from the operation of the Administrative Procedure Act (60 Stat. 237) except as to the requirements of Section 3 thereof. * * *"

precludes application of the judicial review provisions of Section 10 of the Administrative Procedure Act, 5 U.S.C.A. § 1009, to the proceedings and determinations of the National Enforcement Commission, including those here involved.

■ 6. This Court has the duty and the power to appraise the constitutional implications of the proceedings and determinations of the National Enforcement Commission. The said proceedings and determinations are not insulated from such review in this tax refund proceeding by reason of any limitation in the Defense Production Act of 1950, as amended, or otherwise. Nothing in the said Act purports to restrict this Court's said power of review.

■ 7. The provision in the Defense Production Act of 1950, as amended, 50 U.S.C.A.Appendix, § 2159, which precludes application of the judicial review provisions of Section 10 of the Administrative Procedure Act, 5 U.S.C.A. § 1009, in this matter, is not unconstitutional when construed, as this Court has construed it, as not purporting to restrict this Court's power to appraise the constitutional implications of the proceedings and determinations of the National Enforcement Commission.

8. The allegations and arguments of the plaintiff directly place in issue the constitutionality of the determinations of the National Enforcement Commission and of regulations and general orders upon which the said determinations may have been predicated.

■ 9. Assuming, without deciding, that the determinations of the National Enforcement Commission here in issue were proper and not subject to impeachment on constitutional grounds, the disallowance of wage payments as nontaxable deductions from gross income for income tax purposes is a permissible sanction and such disallowance does not constitute an excessive fine or cruel and unusual punishment within the meaning of the Eighth Amendment to the Constitution.

**520**

10. Congress has full power to withdraw the statutory privilege granted taxpayers of subtracting expenses from gross income to determine the amount of income which shall be taxed; such power may be exercised by Congress to any extent compatible with the constitutional guarantee that there shall be equal protection of the laws; and Congress may establish an administrative procedure to hear evidence and determine whether there exist facts upon the basis of which Congress has authorized withdrawal of the statutory privilege. The establishment and utilization of that administrative machinery pursuant to the Defense Production Act of 1950, as amended, does not violate plaintiff's right to jury trial under the Seventh Amendment to the Constitution.

11. The Defense Production Act provisions requiring the President to issue regulations stabilizing wages, salaries and other compensation (Section 402, 50 U.S.C.A.Appendix, § 2102), and to

"prescribe the extent to which any wage, salary, or compensation payment made in contravention of any such regulation or order shall be disregarded by the executive departments and other governmental agencies in determining the costs or expenses of any employer for the purposes of any other law or regulation" (Section 405(b), 50 U.S.C.A.Appendix, § 2105(b))

do not delegate legislative power to the President without sufficient standards or guides, and are not in conflict with Article I, Section 1, of the Constitution.

12. Defendant has not heretofore responded to several of the constitutional issues raised by plaintiff concerning whether or not the administrative process was fairly applied in this case, and whether or not plaintiff was accorded all procedural and substantive rights to which it was entitled. Proper disposition of these issues requires the response by defendant to the allegations and arguments of the plaintiff which

raise those issues. Defendant will so respond within 30 days from the date of these Findings and Conclusions; plaintiff will reply within 20 days thereafter; and hearing on such issues will be set for March 15, 1961.